**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

SEP 17 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BRIAN GOLDBERG,<br><br>        Plaintiff-Appellant,<br><br> v.<br><br>CITY OF BEVERLY HILLS,<br><br>        Defendant-Appellee,<br><br> and<br><br>NAHAL YASHAR; et al.,<br><br>        Defendants. | No.   20-55962<br><br>D.C. No.<br>2:17-cv-09226-AB-GJS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
André Birotte, Jr., District Judge, Presiding

Argued and Submitted September 3, 2021
Pasadena, California

Before:  BENNETT and R. NELSON, Circuit Judges, and EZRA,[**] District Judge.

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     [**]     The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

Brian Goldberg sued the City of Beverly Hills for false arrest and imprisonment; violations of his First, Fourth, and Fourteenth Amendment rights; and use of threats, intimidation, and coercion to violate his rights pursuant to California Civil Code § 52.1(b) ("Bane Act"). The district court granted summary judgment to the City. We have jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 1367, and affirm.

We review *de novo* the district court's grant of summary judgment, viewing the evidence and drawing all inferences in the light most favorable to the non-moving party. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

Goldberg first argues that the City is liable for false arrest and imprisonment because police arrested him after viewing video evidence that contradicted Yashar's account of events and then unreasonably delayed his release. In general, liability for false imprisonment requires an officer to have (1) actual knowledge that the imprisonment is unlawful or (2) "some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." *Bocanegra v. Jakubowski*, 194 Cal. Rptr. 3d 327, 332 (Ct. App. 2015).

The parties do not dispute that Officers Duncan and Clayton took Goldberg into custody following Yashar's citizen's arrest. Under California law, they had no duty to investigate whether there was probable cause to support the citizen's arrest and cannot be liable for false arrest or false imprisonment. *See Arpin v. Santa*

*Clara Valley Transp. Agency*, 261 F.3d 912, 920–21 (9th Cir. 2001); *Kinney v. Cnty. of Contra Costa*, 87 Cal. Rptr. 638, 642–43 (Ct. App. 1970); Cal. Penal Code § 847(b)(3).

As for Goldberg's argument regarding the timing of his release, time taken to book the accused is necessary and reasonable. *See People v. Thompson*, 611 P.2d 883, 897 (Cal. 1980). Goldberg remained in custody for approximately ten and a half hours; he contends that he should have been released when the police department received his fingerprint returns (about ninety minutes after he arrived at the station). But Goldberg's booking was not complete at that time because, due to a computer glitch, the police department had not yet received a return from the Department of Homeland Security. Goldberg offers no evidence to the contrary; he notes the timestamp on the return is "11:13:01 PM" but provides nothing to suggest that is when the report was received by the department (as opposed to generated at DHS). Any delay in his release was the result of an administrative delay in the completion of his booking and was therefore reasonable. *See id.*

Goldberg next argues that he was arrested and detained in retaliation for his public criticism of the police department. But he presents no evidence that his criticism was a substantial or motivating factor in the arrest or detention. *See O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). Indeed, there is no evidence that police were aware of his criticism until after his release (or that Chief

Snowden, who was aware of Goldberg's prior statements, was motivated to retaliate against him).

Moreover, there was probable cause to support Goldberg's arrest. Goldberg argues that video evidence contradicts Yashar's description of the alleged assault such that there was no probable cause for his arrest. To be sure, video surveillance shows that Goldberg did not ride up the elevator with Yashar and therefore could not have assaulted her while traveling in the elevator (as Yashar told police). But even if the police viewed the video before arresting Goldberg, it is undisputed that a confrontation occurred, and the video does *not* capture at least twenty-two seconds during which Goldberg and Yashar were together in the elevator or elevator bay. Any potential discrepancy in Yashar's timeline of events did not defeat probable cause because Yashar's statements were sufficiently definite to establish probable cause that she had been assaulted (even if not while traveling to another floor in the elevator), and the bruising on her back, corroborated her claim that an assault had occurred. *See Peng v. Mei Chin Penghu*, 335 F.3d 970, 979 (9th Cir. 2003).

Goldberg's remaining Bane Act claim also fails. There was probable cause for his arrest, the delay in his release was reasonable, and he has provided no evidence that police officers specifically intended to violate his rights, that they

were aware of his criticism of the police department, or that Chief Snowden was motivated to arrest and detain him because of his prior statements.

**AFFIRMED**.